UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

AMBER G.,

                              Plaintiff,

v.                                                              CASE NO. 6:24-cv-06634
                                                                (JGW)
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

J. Gregory Wehrman, U.S. Magistrate Judge,

### MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docs. 8, 9), as well as Plaintiff's reply brief (Doc. 10.)  Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 8) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 9) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.    RELEVANT BACKGROUND

### A.  Procedural Background

On August 11, 2022, Plaintiff protectively filed an application for supplemental security income disability benefits.  (Tr. 159-64, 62.)  The alleged disability onset date for this application was January 1, 2017.  (Tr. 62.)  Plaintiff's claim was denied initially and

on reconsideration.  (Tr. 77, 87.)  She then timely requested a hearing before an Administrative Law Judge (ALJ) and appeared with counsel for a telephonic hearing before ALJ Gretchen Greisler on November 16, 2023.  (Tr. 34-60.)  On January 2, 2024, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled.  (Tr. 12-33.)  The Appeals Council denied Plaintiff's request for review, (Tr. 1-6), and Plaintiff timely filed her appeal to this Court.

### B.    Factual Background[1]

Plaintiff was born on July 12, 1984, and alleged disability beginning on January 1, 2017.  (Tr. 61-62.)  Plaintiff obtained a GED as well as a certification to be a CAN (certified nursing assistant).  (Tr. 42, 43.)  Her disabling conditions were alleged to include depression, anxiety, arthritis, degenerative disc disease, bilateral knee problems, and lower back problems.  (Tr. 62.)

At the time of the hearing, Plaintiff was thirty-nine years old.  (Tr. 41.)  She testified that she lived with her partner and two children, who were sixteen and seventeen years old.  (*Id.*)  Her son has mental disabilities, and so Plaintiff cares for him.  (*Id.*)  Plaintiff explained that she no longer has a driver's license, and her mother or sister drives her as necessary.  (Tr. 42.)

Plaintiff indicated that her knee and back problems forced her to stop working, as it was becoming harder to stand.  (Tr. 46.)  She was diagnosed with arthritis in both her knees and lower back. (*Id.*)  Plaintiff explained that she engaged in physical therapy, but she testified that it did not help, even after repeated attempts.  (Tr. 47, 50.) She described that the doctors identified her right knee as being worse, but she experienced the same

---

[1] This recitation of facts primarily includes testimony from the hearing before the ALJ.  Other facts will be developed throughout the opinion as relevant to the Court's analysis.

difficulty in both knees. (Tr. 47.) Plaintiff indicated that she is only able to walk a short distance, and her legs give out. (*Id.*) She has concerns that she will fall when she walks. (*Id.*)

Plaintiff further described that she has to sit to do the dishes, wash her hair, or cook, and she cannot sweep or mop because she cannot stand up long enough. (Tr. 48, 52.) She also noted that she cannot put her shoes and socks on because she cannot bend with her back, and her partner has to do it. (Tr. 48.) Plaintiff explained that she can get dressed, but her partner has to take care of the house, help her son shower, shop for groceries, and take out the trash. (*Id.*)

Plaintiff described that she has to alternate between sitting and laying down. (Tr. 48-49.) She explained that she can sit for about twenty-five minutes before laying down, where she will stay for about an hour before needing to get up and move about. (Tr. 49.) She indicated she could lift about fifteen pounds, and carry that amount, but she would have to lay down after. (*Id.*)

In addition to attempting physical therapy, Plaintiff also testified that she sees orthopedics and has received shots in her knee. (Tr. 50.) She noted that she only experienced about a day's worth of relief after getting a shot. (*Id.*) She further indicated that the doctors have not considered surgery due to her age. (*Id.*) Plaintiff, however, did testify about medication she takes for the pain. (*Id.*)

Plaintiff also testified that she experiences back pain, which she described as being from the weight of sitting or standing. (Tr. 51.) She explained that her back pain did not limit her ability to reach in front of her or over her head, but then noted that if the pain was bad, she may be limited in her ability to reach. (Tr. 52.) She also described

that she experiences numbness in her feet occasionally when she lays down that makes it difficult to walk.[2]  (Tr. 52.)

**C.    ALJ's Decision**

Generally, in her decision, the ALJ made the following findings of fact and conclusions of law.

1.  The claimant has not engaged in substantial gainful activity since August 11, 2022, the application date (20 CFR 416.971 *et seq*.). (Tr. 17.)

2.  The claimant has the following severe impairments: a spine disorder, a knee disorder, asthma, and obesity (20 CFR 416.920(c)). (Tr. 17.)

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). (Tr. 20.)

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can occasionally stoop and climb stairs and ramps but cannot balance, crouch, crawl, kneel, climb ladders, ropes or scaffolds, or work at unprotected heights or in close proximity to dangerous machinery. The claimant can occasionally reach overhead. The claimant cannot tolerate concentrated exposure to respiratory irritants. (Tr. 21.)

5.  The claimant is unable to perform any past relevant work (20 CFR 416.965). (Tr. 27.)

6.  The claimant was born on July 12, 1984 and was 38 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963). (Tr. 27.)

7.  The claimant has at least a high school education (20 CFR 416.964). (Tr. 27.)

8.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). (Tr. 27.)

---

[2] Plaintiff also testified about her mental impairments.  (Tr. 52-54.) Because Plaintiff does not appeal any portion of the RFC related to her mental impairments, the Court will not detail that testimony here.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a). (Tr. 27.)

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 11, 2022, the date the application was filed (20 CFR 416.920(g)). (Tr. 28.)

## D.      Medical Opinion Evidence

The ALJ carefully considered several opinions in formulating her RFC.   In considering the agency consultants, she summarized their conclusions, finding them "somewhat persuasive":

Following their record reviews, State agency medical consultants I. Seok, M.D. and S. Gandhi, M.D. determined that the claimant can lift/carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 2 hours in an 8-hour workday; sit for more than 6 hours on a sustained basis in an 8-hour workday; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; occasionally stoop, kneel, crouch, and crawl; and frequently balance (Exhibits 1A and 3A). The authors also found the claimant is limited to occasional overhead reaching bilaterally. Additionally, they found that the claimant should avoid concentrated exposure to respiratory irritants such as fumes, odors, dusts, gases and poor ventilation and that the claimant should avoid even moderate exposure to hazards such as machinery and heights (Exhibits 1A and 3A). These prior administrative medical findings are somewhat persuasive to the extent they are supported by and consistent with the totality of the evidence. The undersigned notes that the authors have program knowledge.

The undersigned is persuaded by the findings that the claimant can stand and/or walk about 2 hours in an 8-hour workday; sit for more than 6 hours on a sustained basis in an 8-hour workday; occasionally stoop and climb ramps and stairs as well as occasionally reach overhead. The undersigned is also persuaded by the findings that the claimant should avoid concentrated exposure to respiratory irritants such as fumes, odors, dusts, gases and poor ventilation and that the claimant should avoid even moderate exposure to hazards such as machinery and heights. These findings are supported by the authors' detailed narrative rationales with citations to supporting evidence from the underlying record. These findings are also supported by and consistent with the longitudinal record, including the examination findings and medical opinions of Dr. Justine Magurno (Exhibits 3F and 4F); the medical opinion of Dr. Brittney Winton (Exhibit 7F);

the X-rays of record (Exhibits 3F6-7; 4F6-7; 5F121, 124, 126; 8F188-89); the examination findings in the claimant's primary care treatment records (Exhibits 1F5, 10; 7F11, 16; 8F133, 150, 168, 188, 195, 209); the claimant's generally conservative course of treatment and positive response to treatment (See, e.g., Exhibits 1F10, 12; 6F; 7F12, 16-17; 8F131, 135, 151, 153, 158, 162, 177, 168, 183, 212, 230); and the claimant's statements of record.

(Tr. 24.)

The ALJ specifically noted which findings she did not find persuasive, explaining

her conclusions as follows:

However, the undersigned is unpersuaded by the findings that the claimant can lift/carry 20 pounds occasionally and 10 pounds frequently; can occasionally kneel, crouch, crawl, and climb ladders, ropes, and scaffolds; and can frequently balance. Here, the undersigned notes that the authors did not examine the claimant or review the record in its entirety. These findings are unsupported by and are inconsistent with the record as a whole, including the medical opinions of Dr. Justine Magurno and Dr. Brittney Winton (Exhibits 3F; 4F; 7F) as well as the X-rays of record (Exhibits 3F6-7; 4F6-7; 5F121, 124, 126; 8F188-89); the examination findings in the claimant's treatment records (Exhibits 1F5, 10; 7F11, 16; 8F133, 150, 168, 188, 195, 209); the claimant's course of treatment and response to treatment (See, e.g., Exhibits 1F10, 12; 6F; 7F12, 16-17; 8F131, 135, 151, 153, 158, 162, 177, 168, 183, 212, 230); and the claimant's statements of record. For example, given that repeated exams have shown that the claimant has a limited ability to squat and at times, she has a somewhat impaired gait (See, e.g., Exhibits 3F2; 4F2; 7F16), it is reasonable to find that she has greater postural restrictions than Dr. Seok or Dr. Gandhi identified. Additionally, given the X-ray findings documenting the degenerative changes in the claimant's lumbar spine and knees (Exhibits 3F6-7; 4F6-7; 5F121, 124, 126; 8F188-89), it is reasonable to find that the claimant has greater lifting and carrying limitations than those identified by Dr. Seok or Dr. Gandhi.

(Tr. 25.)

Next, the ALJ considered the two opinions of examining consultant Dr. Magurno,

finding her conclusions "generally persuasive":

Following her examination of the claimant on November 11, 2022, Dr. Magurno opined that the claimant had "marked limitations for stair climbing, squatting, bending, lifting, and carrying; moderate for walking, standing,

pushing, and pulling; and mild for reaching. She should avoid unprotected heights. There are marked limitations for uneven ground. She should avoid pulmonary irritants" (Exhibit 3F5). Similarly, following her examination of the claimant on June 14, 2023, Dr. Magurno opined that the claimant had "marked limitations walking, standing, bending, squatting, lifting, carrying, climbing, kneeling. Mild limitations for sitting. She should avoid pulmonary irritants" (Exhibit 4F4).

Because Dr. Magurno has program knowledge and had an opportunity to examine the claimant, her medical opinions are generally persuasive. The opinions are largely supported by and consistent with the longitudinal record, including Dr. Magurno's own examination findings as well as the X-rays of record (Exhibits 3F6-7; 4F6-7; 5F121, 124, 126; 8F188-89); the examination findings in the claimant's primary care treatment records (Exhibits 1F5, 10; 7F11, 16; 8F133, 150, 168, 188, 195, 209); the claimant's generally conservative course of treatment and positive response to treatment (See, e.g., Exhibits 1F10, 12; 6F; 7F12, 16-17; 8F131, 135, 151, 153, 158, 162, 177, 168, 183, 212, 230); and the claimant's statements of record.

However, the undersigned is unpersuaded by Dr. Magurno's opinion that the claimant has a moderate limitation for pushing and pulling. This portion of her opinion is unsupported by and is inconsistent with the record as a whole, including her own examination findings that the claimant has 5/5 strength in the extremities (Exhibits 3F4 and 4F3) as well as the normal extremity strength findings throughout the record as a whole (See, e.g., Exhibits 1F5, 10; 7F12; 8F153, 160, 163).

(Tr. 25.)

Finally, the ALJ addressed the opinion of treating provider Dr. Brittney Winton,

finding her opinion to be "partially persuasive":

The claimant's primary care physician, Dr. Brittney Winton, opined that the claimant can frequently lift and carry up to five pounds; can occasionally lift and carry up to ten pounds; can occasionally reach; can never bend, squat, crawl, or climb; can frequently handle and finger bilaterally; can occasionally push and pull bilaterally with the upper extremities; and can occasionally use the right foot for repetitive movements such as pushing and pulling of leg controls but can never use the left foot for such repetitive movements. Additionally, Dr. Winton opined that the claimant has moderate restrictions for unprotected heights; being around moving machinery; and exposure to marked changes in temperature and humidity. She further opined that the claimant has mild restrictions for driving a motor vehicle and exposure to dusts, fumes, gases, noxious odors, and poor ventilation. Finally, Dr. Winton

opined that the claimant would need to lie down during the workday and that she would likely be absent from work due to her impairments or medical treatment about three days per month (Exhibit 7F).

This medical opinion is partially persuasive to the extent it is supported by and consistent with the longitudinal record. The undersigned is persuaded by Dr. Winton's opinion regarding the claimant's ability to lift and carry as well as her opinion that the claimant can never squat and crawl and has restrictions with regard to unprotected heights, moving machinery, and respiratory irritants. These portions of Dr. Winton's opinion are supported by her treatment notes, and they are supported by and consistent with the record as a whole, including the medical opinions of Dr. Magurno (Exhibits 3F and 4F); the X-rays of record (Exhibits 3F6-7; 4F6-7; 5F121, 124, 126; 8F188-89); the examination findings in the claimant's primary care treatment records (Exhibits 1F5, 10; 7F11, 16; 8F133, 150, 168, 188, 195, 209); the claimant's course of treatment and response to treatment (See, e.g., Exhibits 1F10, 12; 6F; 7F12, 16-17; 8F131, 135, 151, 153, 158, 162, 177, 168, 183, 212, 230); and the claimant's statements of record.

However, the remainder of Dr. Winton's opinion is unpersuasive because it is not supported by or consistent with the longitudinal record. Specifically, Dr. Winton's treatment notes, including the notes submitted with her opinion form (Exhibits 7F6-19), and Dr. Magurno's examination findings do not document significant issues with the claimant's neck or upper and lower extremities that would support a limitation to occasional bilateral reaching in all directions; limitations with regard to bilateral handling and fingering; and restrictions for repetitive movements such as pushing and pulling with the upper and lower extremities. For instance, at the first consultative examination, Dr. Magurno noted that the claimant's hand and finger dexterity were intact with grip strength 4/5 bilaterally and her upper extremity strength was 5/5 with hips and knees strength being 4/5, but at the second consultative examination, Dr. Magurno noted that the claimant's hand and finger dexterity were intact with 5/5 grip strength bilaterally and her upper and lower extremity strength was 5/5 (Exhibits 3F4; 4F4). Similarly, while some limited shoulder range of motion was noted bilaterally at the first consultative examination (See also, Exhibits 7F6-8), full bilateral shoulder range of motion was noted at the second consultative examination (Exhibits 3F4; 4F3). Normal cervical spine findings were noted at both examinations (Exhibits 3F3; 4F3). Additionally, Dr. Winton's opinion is not supported by her office examination findings that the claimant has normal strength in the upper and lower extremities with sensation intact distally and no problems with her neck (See, e.g., Exhibits 1F5, 9-10; 7F11-12, 16; 8F153, 158, 160, 163, 176, 215). The diagnoses contained within Dr. Winton's opinion form do not reflect any problems with the claimant's neck or upper extremities (Exhibit 7F1). Further, Dr. Winton's opinion that the claimant requires a limitation regarding exposure to changes in temperature

and humidity; that the claimant needs to lie down during the workday; and that the claimant would likely be absent from work about three days per month are not supported by the clinical findings of record, which generally show the claimant's psychiatric evaluations to be normal and that she presents in no distress (See, e.g., Exhibits 1F2, 5, 9-10; 3F2; 4F2; 7F11-12; 8F133, 150, 153, 171, 176, 188, 191-92, 215, 220, 226, 230, 241, 244). Therefore, this portion of Dr. Winton's opinion is unpersuasive.

(Tr. 25-27.)

## II.    LEGAL STANDARD

### A.    Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

### B.      Standard to Determine Disability

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

### III.    ANALYSIS

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence because she is unable to meet the demands of sedentary work, specifically that she can stand or walk for up to two hours per day and stoop occasionally.  (Doc. 8-1 at 7.)  In support of this argument, Plaintiff challenges the ALJ's evaluation of the medical opinion evidence.

As a preliminary matter, the regulations explicitly provide that the RFC is an administrative finding reserved to the Commissioner and not a medical finding.  20 C.F.R. § 404.1527(d); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (recognizing that "the ALJ bears 'the final responsibility' for making RFC determinations"); *see also Desirae D. v. Comm'r of Soc. Sec.*, 20-cv-00054-JGW, 2021 WL 2042576, at *3 (W.D.N.Y. May 21, 2021).  As such, the RFC conclusion "need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."  *Schillo*, 31 F.4th at 78.  Indeed, an ALJ is permitted to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  This naturally requires the ALJ to reconcile conflicting medical evidence in the record. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

With regard to an ALJ's consideration of medical opinion evidence, the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, provide that the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1)

supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain his consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source in the opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between a medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

Having carefully reviewed the record, the Court finds that the ALJ's RFC is supported by substantial evidence and further finds no error in the ALJ's evaluation of the medical opinion evidence. Contrary to Plaintiff's arguments, substantial evidence supports the ALJ's finding that Plaintiff could stand or walk up to two hours and occasionally stoop. Indeed, Plaintiff's arguments are, at their core, merely an invitation to this Court to reweigh the evidence, which is simply not a basis for remand. *See David C. v. Comm'r of Soc. Sec.*, No. 6:23-cv-06510-CJS, 2024 WL 4347151, *18 (W.D.N.Y. Sept. 30, 2024) (citing *Lisa M. o/b/o J.S. v. Comm'r of Soc. Sec.*, No. 1:21-cv-00292 EAW, 2023 WL 3943997, at *3 (W.D.N.Y. June 12, 2023) ("A disagreement with how the ALJ weighed the evidence is not a valid basis to challenge the ALJ's determination.")). This Court is squarely prohibited from re-weighing the evidence. *See also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016)). And, once the factual conflicts are resolved by the ALJ, the factual findings cannot be overturned by this Court unless "a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (citation omitted). As will be set forth below, Plaintiff does not satisfy this standard.

To begin, the Court finds that the ALJ's evaluation of the medical opinions is without error and supports the ALJ's RFC, including that she can stand/walk up to two hours and occasionally stoop. Contrary to Plaintiff's argument, Dr. Magurno's marked restrictions on Plaintiff's ability to walk and stand are consistent with a sedentary RFC. *See Ellers v. Berryhill*, 16-CV-6722L, 2018 WL 2901333, at *2 (W.D.N.Y. June 11, 2018); *Vesneske-Margage v. Berryhill*, 1:16-cv-00500 (MAT), 2017 WL 4112021, at *4 (W.D.N.Y. Sept. 18, 2017). Further, while Plaintiff argues that the "marked" term used by

13

Dr. Magurno is too vague, the Court disagrees.  In light of the detailed examination findings, the Court does not find Dr. Magurno's limitations to be "too vague."  *See Martin v. Comm'r of Soc. Sec.*, 19-cv-406-FPG, 2020 WL 3547042, at *2 (W.D.N.Y. June 30, 2020).  And, as the ALJ concluded, the RFC is supported on these points by Dr. Magurno's examination.  (*See* Tr. 25; *see also* Tr. 293, 300.)

Next, the agency reviewer opinions similarly support the ALJ's RFC finding. The ALJ specifically found persuasive the conclusions that Plaintiff could stand or walk about two hours in an eight-hour day, sit for more than six hours, occasionally stoop and climb ramps and stairs as well as occasionally reach overhead.  (Tr. 24.)  These conclusions are supported by the record.  Here, the agency reviewers cited x-rays[3] of Plaintiff's spine and knee, treatment records, and examination findings by Dr. Magurno.[4]  (*See* Tr. 72, 84.)  These findings included normal gait, negative straight leg raising tests, and full motor strength in all extremities (except for 4/5 strength in three muscle groups during the first exam but which improved to full strength in the second).  (Tr. 293, 300.)  Having reviewed the record, these findings fairly represent the findings contained in the treatment record.[5]

Further, as noted by the ALJ, Plaintiff experienced a positive result from treatment, supporting the ultimate RFC.  (*See* Tr. 688, 693, 695, 699) (reporting pain levels

---

[3] Plaintiff appears to argue that the x-rays reflect certain deficiencies in Plaintiff's hips that none of the experts or ALJ discussed.  (*See* Doc. 8-1 at 16.)  However, the Court notes there was never any allegation or evidence of functional limitation based on Plaintiff's hips.

[4] Plaintiff argues that the agency reviewers erred by deviating from Dr. Magurno's conclusions.  However, as noted above, marked limitations are not inconsistent with being able to walk or stand for two hours.  *See Ellers*, 2018 WL 2901333, at * 2; *Vesneske-Margage*, 2017 WL 4112021, at *4.

[5] While Plaintiff points to certain findings not included in the agency reviewers' analysis, the Court does not find this to be detrimental.  First, it is logical that a medical opinion would contain only those findings which would support its conclusion, as it remains the function of the ALJ to comprehensively review the record. *Matta*, 508 F. App'x at 56 (noting that an ALJ is permitted to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.")  Second, it is not required that every piece of evidence be identified, and the failure to identify evidence does not mean it was not considered by the ALJ. *Brault*, 683 F.3d at 448; *see also Shane W. v. Comm'r of Soc. Sec.*, No. 1:23-cv-01313-CJS, 2025 WL 723116, at *9 (W.D.N.Y. Mar. 6, 2025).

improving, medication working, physical therapy being "extremely helpful" and being able to move around the house more).  The Court similarly finds no error in the ALJ's consideration of Plaintiff's conservative treatment.  The ALJ did not reject Plaintiff's claim of disability solely because of her treatment, but rather identified it as a factor in her decision.  This is permissible. *Snyder v. Comm'r of Soc. Sec.*, No. 22-277-cv, 2023 WL 1943108, at *3 (2d Cir. Feb. 13, 2023) (summary order) ("[T]he regulations explicitly state that treatment and methods used to alleviate symptoms, and how symptoms affect patterns of daily living, are relevant to the ALJ's assessment.").

Plaintiff also argues that, because the ALJ rejected certain portions of the agency reviewer opinions, she should have realized how "off" the opinions were and not accepted any portion of the opinions.  The Court is not persuaded.  Rather, the ALJ properly considered the opinions and deviated based on additional evidence received into the record. *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (the ALJ did not commit an error by deviating from consultative examiners' recommendations to decrease plaintiff's RFC based on other evidence in the record).

Contrary to Plaintiff's contention, it is well-settled that an ALJ is permitted to rely on a state agency medical consultant's opinion, as such opinions can constitute substantial evidence when they are consistent with the medical evidence in the record. *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (recognizing that the Commissioner's regulations permit the opinions of non-examining sources to constitute substantial evidence in support of the ALJ's decision and can even override a treating source's opinion); *see also Valdes-Ocasio v. Kijakazi,* No. 21-3152, 2023 WL 3573761, at *2 (2d Cir. May 22, 2023).  As set forth above, the Court finds that the agency reviewer

15

opinions were consistent with the record evidence and thus constitute substantial evidence to support the ALJ's RFC.

The Court also rejects Plaintiff's challenges to the ALJ's evaluation of Dr. Winton's opinion.  Contrary to Plaintiff's contention, the Court is able to follow the ALJ's evaluation and conclusions.  While the ALJ did not expressly address Dr. Winton's opinion regarding bending, it is clear from the record and her decision that she did not accept this portion of Dr. Winton's opinion.  *See Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (per curiam) (recognizing that remand is not necessary when the Court is "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.")  *See also Ryan on Behalf of V.D.C. v. Comm'r of Soc. Sec.*, No. 21-2947-CV, 2022 WL 17933217, at *2 (2d Cir. Dec. 27, 2022) (declining to "remand for a clearer explanation because, looking at the whole decision, we are not 'unable to fathom the ALJ's rationale in relation to evidence in the record.'" (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (internal quotations and citations omitted)).  The ALJ detailed her evaluation of Dr. Winton's opinion, and the Court finds no error.

In sum, the Court finds that ALJ Greisler properly evaluated the medical opinions. Her analysis was very thorough and well detailed.  It is clear to the Court that the ALJ properly discharged her obligation by considering the whole of the record, including all opinions, and formulating an RFC specific to Plaintiff's abilities.  *See April W. v. Comm'r of Soc. Sec.*, No. 1:24-cv-00044-MAV, 2024 WL 4804778, *5 (W.D.N.Y. Nov. 14, 2024) (recognizing that an ALJ "is free to reject portions of medical-opinion evidence not

supported by objective evidence")(quoting *Demeca P. v. Comm'r of Soc. Sec.*, No 1:22-cv-0504, 2024 WL 4505265, at *4 (W.D.N.Y. Oct. 16, 2024)).

Finally, while Plaintiff points out objective evidence and treatment notes that she contends supports her position that she is disabled and which contradict the diagnostic imaging analysis and treatment notes cited by the ALJ, (*see* Tr. 22-23), the Court notes that, at most, she has identified a conflict in the evidence, which is to be resolved by the ALJ. *See Veino*, 312 F.3d at 588. The ALJ carefully detailed Plaintiff's treatment history, concluding that it limited Plaintiff to the RFC she formulated. The Court concludes that the ALJ did not err in her analysis. Plaintiff has simply not shown that "the record requires a reasonable factfinder to reach a different result." *See Spottswood v. Kijakazi*, No. 23-54-cv, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (summary order).

## IV.   CONCLUSION

Based on the foregoing, the Court finds no basis for remand. **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 8) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 9) is **GRANTED**.

The Clerk of Court is **DIRECTED** to close this case.

Dated: March 30, 2026          J. Gregory Wehrman
Rochester, New York            HON. J. Gregory Wehrman
                               United States Magistrate Judge

17